## UNITED STATES v. McCURDY, County Treasurer, et al. *

(Circuit Court of Appeals, Eighth Circuit.   April 14, 1922.)

No. 5941.

1. **Taxation ⬤⟳5—Lands held by United States in trust not taxable.**

Lands purchased by the United States from the Cherokee Nation for the Osage and Kansas Indians, and allotted under Act June 28, 1906, were not taxable so long as they were held in trust by the United States, especially in view of Oklahoma Enabling Act June 16, 1906.

2. **Taxation ⬤⟳181—Lands not taxable on death of allottee before delivery of deed.**

Under Act June 28, 1906, § 2, subd. 7, and section 8, and the provision for deeds to lands allotted to Osage Indians, it required a deed executed and approved to pass title, and lands did not become taxable on the death of an allottee prior to the execution and delivery of a deed.

3. **Taxation ⬤⟳181—Deed held not to relate back to allotments, so as to make lands taxable.**

Deeds to lands allotted to the Osage Indians under Act June 28, 1906, executed in May and June, 1909, and approved by the Secretary of the Interior July 30, 1909, did not relate back to the time of the approval of the allotments, so as to make the land subject to a tax imposed as of March 1, 1909, as the doctrine of relation is a legal fiction, adopted for purposes of justice, and not to impose a burden.

4. **Taxation ⬤⟳710—Moneys paid to redeem from illegal taxes may be recovered.**

Moneys paid to redeem lands sold for taxes illegally assessed on Indian lands may be recovered.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by the United States against Eneas J. McCurdy, County Treasurer of Osage County, Okl., and others. From a judgment dismissing the action, plaintiff appeals. Reversed and remanded, with instructions.

S. W. Williams, Sp. Asst. Atty. Gen. (J. W. Howell, Sp. Asst. Atty. Gen., on the brief), for appellant.

E. E. Grinstead, of Pawhuska, Okl. (C. K. Templeton, E. F. Scott, and Frank T. McCoy, all of Pawhuska, Okl., on the brief), for appellees.

Before CARLAND, Circuit Judge, and TRIEBER and POLLOCK, District Judges.

CARLAND, Circuit Judge.   The United States brought this action against appellees to enjoin the sale for taxes for the year 1909 of the lands described in the complaint, to set aside sales already made of such lands on account of taxes alleged to have become due and delinquent for said year, and to recover certain money paid by certain In-

dians to redeem their lands so sold. The lands were allotted to non-competent members of the Osage Tribe of Indians. The case was heard on the complaint, answer and stipulation of the parties. The trial court dismissed the action, and its ruling is assigned as error.

Reduced to its lowest terms, the question for decision is: ' Were the Indians named in the complaint the owners of the lands in question on March 1, 1909, that being the date on which real estate in the state of Oklahoma for the year 1909 became taxable? The lands in controversy were originally purchased by the United States from the Cherokee Nation of Indians on June 4, 1883, for the benefit of the Osage and Kansas Indians, and were allotted under the Act of June 28, 1906 (34 Stat. 539). The allotments were completed November 19, 1908. All the allottees died prior to the date last mentioned. The lands were sold November 5, 1917, for the taxes of 1909. Although the allotments were approved by the Secretary of the Interior on or prior to November 19, 1908, deeds for the lands were not signed by the principal chief of the Osage Tribe until in May and June, 1909, and were not approved by the Secretary of the Interior until July 30, 1909.

[1, 2] As long as the lands were held in trust by the United States, they were not taxable. This would necessarily be so, and the Supreme Court in U. S. v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, and Kansas Indians, 5 Wall. 737, 18 L. Ed. 667, has so decided. See, also, the Enabling Act of June 16, 1906 (34 Stat. 267), under which Oklahoma and the Indian Territory were admitted to the Union. Under the Act of June 28, 1906, the lands embraced in other than homestead allotments, which were called surplus lands, were made inalienable for a period of 25 years and nontaxable for 3 years after the approval of the act, subject to the action of Congress. The lands in controversy were surplus lands. Subdivision 7 of section 2 of the Act of June 28, 1906, contains the following provision:

"Provided, that the surplus lands shall be nontaxable for the period of three years from the approval of this act, except where certificates of competency are issued or in the case of the death of the allottee, unless otherwise provided by Congress."

It is contended by appellees that as the lands in controversy were allotted in the name and right of the Osage members who died prior to November 19, 1908, and as section 8 of the act of 1906, provides that the lands of deceased members shall descend according to the laws of Oklahoma that the owners of these lands on March 1, 1909, had received the title to the same by descent, and not by allotment; but, if this is true, the heir would only get such title as the ancestor had. This contention also assumes that title to the lands in controversy passed from the United States by reason of the allotment. To so hold would render that portion of the act of 1906 in regard to deeds of no use. The language referred to reads as follows:

"All deeds to said Osage lands or any part thereof shall be executed by the principal chief for the Osages, but no such deeds shall be valid until approved by the Secretary of the Interior."

We are clearly of the opinion that it required a deed executed and approved as provided in the act to pass the title. U. S. v. Reynolds, 250 U. S. 104, 39 Sup. Ct. 409, 63 L. Ed. 873. The lands did not become taxable on the death of the allottee prior to the execution and delivery of the deed that the law declared should convey the title.

[3] Counsel for the appellees, however, urge that, if it is true that the title did not pass until the deeds were executed and approved, that title would relate back to and take effect as of the time of the approval of the allotments. The doctrine of relation, however, is a legal fiction, adopted by the courts for the purposes of justice, and not to impose a burden. Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534; Lykins v. McGrath, 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485.

[4] Moreover, the doctrine of relation could not be applicable in this case as there was no basis for it on March 1, 1909. The deeds had not then been executed and approved. That the money paid for illegal taxes may be recovered in this case is established by Ward v. Love County, 253 U. S. 18, 40 Sup. Ct. 419, 64 L. Ed. 751.

The judgment below is reversed, and the case remanded, with instructions to grant the relief prayed for.